## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAMES GILLEECE and ROBERT REISS,** | **Civil Action No. 2:08-cv-02795** |
| **Plaintiffs,** | |
| **v.** | **OPINION** |
| **TOWNSHIP OF UNION, FRANK BRADLEY, and BRENDA RESTIVO,** | **HON. WILLIAM J. MARTINI** |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>[1]

### I.    INTRODUCTION

This is a civil rights action brought by two Township of Union ("Township") police officers, plaintiff Patrolman James Gilleece and plaintiff Sergeant Robert Reiss, alleging that the Defendants, i.e., the Township, Frank Bradley, the Township's Business Administrator, and (then) Mayor Brenda Restivo, failed to promote Plaintiffs in retaliation for Plaintiffs' exercising their First Amendment rights, specifically, engaging in union activities. The civil rights action is brought under 42 U.S.C. § 1983. Compl. ¶¶ 25-29 (Count 4). The remaining counts, brought under state law, include: an invasion of privacy claim (Count 1); a defamation claim (Count 2); and a Conscientious Employee Protection Act claim ("CEPA") (Count 3). Originally, each count was brought against each Defendant. However, Plaintiffs have consented to dismissal of all claims against Restivo, and, in prior proceedings, the parties consented to dismissing the defamation claim against the Township, and to Gilleece's CEPA count in its entirety.

For the reasons elaborated below, the Court will **GRANT** in part, and **DENY** in part Defendants' motion for summary judgment. Specifically, Counts 1 and 2 will be dismissed. All other relief is **DENIED**.

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

## II.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The general chronology of events does not appear to be disputed.

In 2003, Patrolman Gilleece was elected Vice President of the Policemen's Benevolent Association, Township of Union, Local 69 ("PBA"), and Sergeant Robert Reiss was elected Vice President of the Superior Officers Association ("SOA").

In November 2006, the state Department of Personnel produced a list of candidates eligible for promotion to lieutenant based on examination results. The list had nine names and in February 2007, a four person (first round) interview committee, including Defendant Bradley, interviewed the top six candidates, including Plaintiff Reiss. The interview committee recommended that the top four candidates, as measured by examination results, be promoted to lieutenant. Reiss who placed fifth was passed over. In July 2007, a second list of eligible candidates was certified. Reiss now stood at the top of the list. In late July 2007, the top five candidates were interviewed by a three member (second round) interview committee, including Defendant Bradley. The interview committee now unanimously recommended for promotion two candidates, Bayer and Foster, who placed *immediately* below Reiss, as measured by examination results, but had better scores in connection with the interview process. Reiss was the *only* candidate who had better test scores than the candidates who received the interview committee's recommendation. The Township Committee (composed of four members and the mayor) approved the interview committee's recommendation on or about September 7, 2007. Sergeant Bayer, one of the two sergeants promoted to lieutenant, was treasurer of the SOA at this time. The SOA is Sergeant Reiss's union.

Gilleece had an experience similar to Reiss. In October 2006, the state Department of Personnel produced a list of candidates eligible for promotion to sergeant based on examination results. The list had ten names and in January 2007, a four person (first round) interview committee, including Defendant Bradley, interviewed the top six candidates, including Plaintiff Gilleece. The interview committee recommended that the top three candidates, as measured by examination results, be promoted to sergeant. Gilleece who placed fourth was passed over. In June 2007, a second list of eligible candidates was certified. Gilleece now stood at the top of the list. In late July 2007, the top five candidates were interviewed by a three member (second round) interview committee, including Defendant Bradley. The interview committee now recommended for promotion two candidates, Kelly and Skiper, who placed *immediately* below Gilleece, as measured by examination results, but had better scores in connection with the interview process. Gilleece was the *only* candidate who had better test scores than the candidates who received the

2

interview committee's recommendation. The Township Committee approved the interview committee's recommendation on or about September 7, 2007.

On July 12, 2005, Plaintiff Reiss and sixty other SOA and PBA members attended a Township Committee meeting to support efforts to keep the "jobs in blue" program. Bradley left the meeting, but afterwards Reiss saw a man tell Acting Chief Gordiano that Bradley wanted to see him. On July 22, 2005 and on January 11, 2006, the PBA filed an unfair labor practice charge with the New Jersey Public Employment Relations Commission ("PERC") against the Township. The PERC Complaint alleged that the Township illegally discontinued the "jobs in blue" program without proper union negotiations. The PERC Complaint also alleged that internal affairs officers conducted unlawful surveillance of police union members under orders from Defendant Bradley. A hearing was held on September 25, 2006 on the PERC Complaint. Reiss testified as to what he saw at the Township Committee meeting. On June 29, 2007, the hearing officer decided the case, and in a written opinion, the hearing officer concluded that the PBA's conduct angered Bradley, Bradley told Gordiano that he would be held accountable for the officers' conduct, and that, although Bradley did not specifically order the surveillance, his admonishment to Gordiano set it in motion. Reiss's testimony may have been necessary to those findings, as Reiss testified that he saw a person at the meeting tell Gordiano that Bradley wanted to see him after Bradley had already left the meeting. Bradley would later testify that the PERC hearing officer's opinion of June 29, 2007 was the first notice he had that Reiss had testified in the PERC proceedings. In late July, each of the two Plaintiffs would be interviewed by the relevant (second round) interview committee and passed over. In each case, Bradley was a member of the interview committee. And on or about September 7, the Township Committee approved the recommendation of the interview committees.

On September 11, 2007, a reporter contacted the Township's Public Information Officer, Ms. Durso, for information about the promotions. Durso met with Bradley that day to get information for the press. The only specific person Durso could remember meeting with about the draft press release was Bradley, although she remembered meeting with other people whose identity she could not remember, nor could she remember what information these other people supplied. Durso prepared a draft press release and a final press release. The latter was approved for distribution. Unlike the draft press release, the final press release made no mention of those officers who had been passed over, i.e., Plaintiffs in this action. By contrast, the draft press release mentioned both Plaintiffs by name and explained that they were passed over allegedly because of their disciplinary history. Durso sent both press releases to the press. Defendants assert that the draft was sent "accidentally." Afterwards, Durso contacted the press and asked them to rely exclusively on the approved final press release. Plaintiffs claim they were injured by the release of the information in the draft press release; Plaintiffs allege invasion of privacy and defamation. Articles later appeared in the

Star Ledger and in the Union Leader. One of the two articles mentioned Plaintiffs by name, although that information appeared to come from the PBA Union president. The other article, although not mentioning Plaintiffs by name, did indicate that they were passed over because of "work-related disciplinary issues" and so appears to have relied on the draft press release.

Subsequently, Plaintiffs filed this suit in the Superior Court of New Jersey, Union County. Defendants removed to this Court. Jurisdiction is based on removal jurisdiction, federal question jurisdiction (the Section 1983 count), and supplemental jurisdiction.

Before the Court is Defendants' motion for summary judgment.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if the "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at

4

trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material negating the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "[merely] show[s] – that is, point[s] out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

## IV.   ANALYSIS

Defendants asserts a number of defenses. This opinion addresses each in turn.

### A.   The Section 1983 Claim Alleging Retaliation for the Exercise of First Amendment Rights

"A cause of action for retaliation for protected conduct under § 1983 is stated upon allegations that (1) the plaintiffs engaged in protected [First Amendment] conduct; (2) the plaintiffs were retaliated against; and (3) the protected conduct was a substantial or motivating factor in the retaliation. " *Bradshaw v. Township of Middletown*, 296 F. Supp. 2d 526, 537 (D.N.J. 2003). "There is no doubt that retaliation against public employees solely for their union activities violates the First Amendment." *Clue v. Johnson*, 179 F.3d 57, 60 (2d Cir. 1999); *Bradshaw*, 296 F. Supp. 2d at 544 ("To state a claim under § 1983, plaintiffs must allege instances of union activity for which they were retaliated against by persons acting under color of state law."). Here Reiss and Gilleece were both union vice presidents and Reiss was a witness in the PERC action, in which findings were made by the adjudicator that found fault with Bradley's conduct.

The first and second elements do not appear to be in dispute. Reiss engaged in protected speech at the PERC hearing. Gilleece's claim appears to be tied not to any particular speech, but to his right to associate in the PBA, the union that brought the PERC action. Likewise, both Plaintiffs argue that the failure to promote them constitutes retaliation. The primary evidence that their union activities constitutes a substantial or motivating factor in the retaliation is that the hearing officer announced his decision on June 29, 2007 and the (second round) interview committee met with Plaintiffs and other candidates in late July 2007 and recommended neither Plaintiff. Moreover, each of the Plaintiffs had better examination scores than the candidates who were recommended by the interview committee and no other higher scoring candidates were passed over in this manner.

5

With respect to Gilleece, Defendants argue that the "record is devoid of any evidence of union activity that was known to any of the Defendants." In other words, Gilleece's union activity could not be a motivating factor in regard to the decision not to promote him unless Bradley knew he was in the PBA. Plaintiffs respond by pointing to (A) the rough temporal proximity between the adjudicator's decision in the PERC action (brought by the PBA, Gilleece's union) and the decision of the second round interview committee, on which Bradley sat, (B) the fact that two union officers were passed over in favor of others having lower examination scores, along with the fact that no other higher scoring candidates were likewise passed over, and (C) the release of the allegedly defamatory (and later retracted) draft press release as indications of retaliatory animus, given that Bradley was the only specific person who Durso could remember as supplying information that went into the draft release. These are sufficient facts under the governing summary judgment standard to create a genuine issue of material fact in regard to whether or not Bradley took action to punish Gilleece for protected First Amendment activity.

Reiss was mentioned in the June 29, 2007 PERC decision and Bradley admits that he gleaned from that document that Reiss had testified. The other facts put forward by Plaintiffs indicating that Bradley acted in retaliation for Reiss's First Amendment activities, see (A) through (C) above, are also probative,[2] and they would appear to be strong enough to support a jury decision. Furthermore, Reiss can prevail on his First Amendment free speech claim even if Bradley did *not* know that Reiss was a vice president of the SOA. Reiss need only prove that Bradley retaliated in consequence of Reiss's testifying at the PERC hearing.

## B.    Municipal Liability under Section 1983

"It is well established that a municipality is liable under § 1983 only when the plaintiff suffers a constitutional deprivation that results from an official custom or policy. A plaintiff shows that a policy existed when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. On the other hand, a custom is identified by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Vulcan Pioneers Of N.J. v. City of Newark*, C.A. No. 08-4668, 2010 WL 1226345, at *3 (3d Cir. Mar. 31, 2010) (brackets, quotation marks, and citations omitted).

---

[2] Defendants argue that the temporal proximity between the PERC decision and the late July interviews is undercut by the fact that the process and timing for interviewing candidates had been put in place prior to the June 29, 2007 decision. Likewise, although Reiss was passed over; the committee recommended Bayer; another SOA officer, just like Reiss. Whether these facts undercut Plaintiffs' position is a classic jury question.

Defendants argue that the Plaintiffs have failed to allege and cannot prove that the municipal Defendant, the Township, has a practice or custom of denying promotions to police officers active in unions, particularly where, as here, Bayer, an officer of the SOA just as Reiss is, was promoted to lieutenant.

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body – [and to those whose acts or edicts may fairly be said to represent official municipal policy] whether or not that body had taken similar action in the past or intended to do so in the future – because even a single decision by such a body unquestionably constitutes an act of official government policy.... [But] [t]he [government body] [or individual] official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482-83 (1986).

Plaintiffs argue that Bradley is a policy-maker of the Township whose acts can be said to fairly represent municipal policy. It is clear that Bradley was one member of each of the two second round interview committees. He (or, more properly, his committee) had discretion in regard to which candidates to recommend to the Township Committee, but the Township Committee had final authority in regard to approving candidates. All Bradley or his committee could do was to recommend candidates for promotion. In these circumstances, municipal liability does not attach. Plaintiffs suggests that by adopting the interviewing committees' recommendations, the municipality ratified the decision by acting through those who establish final government policy on the matter. "But the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the [alleged] wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988). Municipal liability through ratification attaches where the municipal authorities with final decision making authority (e.g., the Township Committee) approving a subordinate's decision (e.g., the interviewing committees) know the basis for that decision. As no such evidence is put forward here, Plaintiffs' Section 1983 claim against the Township fails.

### C.     New Jersey Tort Claim Act

Count 1 (invasion of privacy) and Count 2 (defamation) are state tort claims subject to the New Jersey Tort Claims Act ("Act"). N.J.S.A. 59:1-1 et seq. The Act requires that

7

plaintiffs bringing causes of action against public entities or public employees provide notice (as provided by the Act) within 90 days of the accrual of the cause of action. Plaintiffs do not argue that they have complied with the Act's notice requirement. Rather, they argue that Bradley's conduct was outside the scope of his employment so that he does not enjoy the protection of the Act. This seems incorrect. Bradley supplied information to Durso, the Public Information Officer, at Durso's request. Durso asked for that information in response to requests from the press. Bradley's information may have been incorrect or even a lie or even ill intended – but it was all within the scope of his employment. Therefore, these counts fail for failure to comply with the Act's notice requirement. *See Velez v. Jersey City*, 850 A.2d 1238 (N.J. 2004); *Gazillo v. Grieb*, 941 A.2d 641, 644 (N.J. Super. Ct. App. Div. 2008) (requiring notice under the Act where there is "some nexus between the wrong that is complained of and the defendant's public employment").

### D. The CEPA Count

In Count 3, Plaintiff Reiss brings a CEPA claim against the Township and Bradley. *See* N.J.S.A. 34:19-1 et seq. A CEPA claimant must establish: "(1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (2) that he or she performed whistle-blowing activity described [by statute]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999).

In regard to the first two elements, Reiss testified in the PERC hearing about Bradley's conduct allegedly tying him to allegations involving illegal surveillance of police officers. The adverse employment action was the failure to promote him in connection with the second round interviews. As to causal connection, Reiss has put forward some circumstantial evidence, including the fact that he was the highest scoring candidate on the examination, but was passed over nonetheless and that Bradley was Durso's apparent source of information in the draft press release which was later retracted. Defendants argue that no adverse employment action was taken. However, a failure to promote is recognized by New Jersey courts as "an adverse employment action." *Regan v. City of New Brunswick*, 702 A.2d 523 (N.J. Super. Ct. App. Div. 1997) (reversing grant of summary judgment to defendants and remanding plaintiff's CEPA claim for failure to promote), *partially abrogated on other grounds*, *Dzwonar v. McDevitt*, 828 A.2d 893 (N.J. 2003). Defendants also argue that a causal connection has not been established given that the remaining two members of the second round interview committee are not alleged to have been motivated by animus, nor are the members of the Township Committee which approved the interview committee's recommendation. Reiss, however, has put forward enough circumstantial evidence to suggest that Bradley's vote on the interview committees may have tipped the balance to the

candidates with lower examination scores and that Bradley may have been motivated by animus connected to Reiss's testimony. Finally, Defendants argue that there was a legitimate non-retaliatory reason for the failure to promote Reiss, i.e., the municipality, the Township Committee, and the interview committees were following the structured process for police promotions which had an interview component which may, in some circumstances, overcome examination rankings. The fact that the interview committee may have used the formalities of its structured process to reach a decision does not speak to what motivated Bradley or the other members in reaching the decision they reached. Bradley was one member of each of two three-person second round interview committees. His vote or scoring in regard to each candidate very well may have been determinative.

## V.   CONCLUSION

For the reasons elaborated above, the Court will **GRANT** in part, and **DENY** in part Defendants' motion for summary judgment. Specifically, Counts 1 and 2 are dismissed. All other relief is **DENIED**.

An appropriate order accompanies this memorandum opinion.


s/ William J. Martini
DATE: May 17, 2010                    **William J. Martini, U.S.D.J.**

9