UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAMES GILLEECE and ROBERT REISS,** | Civil Action No. 2:08-cv-02795 |
| Plaintiffs, | |
| v. | OPINION |
| **TOWNSHIP OF UNION, FRANK BRADLEY, and BRENDA RESTIVO,** | HON. WILLIAM J. MARTINI |
| Defendants. | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

This is a civil rights action brought by two Township of Union ("Township") police officers, plaintiff Patrolman James Gilleece and plaintiff Sergeant Robert Reiss, alleging that the Defendants, i.e., the Township, Frank Bradley, the Township's Business Administrator, and (then) Mayor Brenda Restivo, failed to promote Plaintiffs in retaliation for Plaintiffs' exercising their First Amendment rights, specifically, engaging in union activities. The civil rights action, Count IV, is brought under 42 U.S.C. § 1983. The remaining counts, brought under state law, include: an invasion of privacy claim (Count I); a defamation claim (Count II); and a Conscientious Employee Protection Act claim brought only by Reiss ("CEPA") (Count III). Defendants brought a summary judgment motion, which the Court granted in part by dismissing Counts I and 2, and by dismissing Count 4 against the Township.

Defendants now move for reconsideration, seeking dismissal of the two remaining counts (Counts III and IV). For the reasons elaborated below, the Court will **GRANT** the motion in part, and will **DENY** it in part. Plaintiff Gilleece's Section 1983 claim will be dismissed; Gilleece will be terminated from this action; and no other relief will be granted.

## II.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The general chronology of events does not appear to be disputed. The facts below appear in this Court's prior opinion.

In 2003, Patrolman Gilleece was elected Vice President of the Policemen's Benevolent Association, Township of Union, Local 69 ("PBA"), and Sergeant Robert Reiss was elected Vice President of the Superior Officers Association ("SOA").

In November 2006, the state Department of Personnel produced a list of candidates eligible for promotion to lieutenant based on examination results. The list had nine names and in February 2007, a four person (first round) interview committee, including Defendant Bradley, interviewed the top six candidates, including Plaintiff Reiss. The interview committee recommended that the top four candidates, as measured by examination results, be promoted to lieutenant. Reiss who placed fifth was passed over. In July 2007, a second list of eligible candidates was certified. Reiss now stood at the top of the list. In late July 2007, the top five candidates were interviewed by a three member (second round) interview committee, including Defendant Bradley. The interview committee now unanimously recommended for promotion two candidates, Bayer and Foster, who placed immediately below Reiss, as measured by examination results, but had better scores in connection with the interview process. Reiss was the only candidate who had better test scores than the candidates who received the interview committee's recommendation. The Township Committee (composed of four members and the mayor) approved the interview committee's recommendation on or about September 7, 2007. Sergeant Bayer, one of the two sergeants promoted to lieutenant, was treasurer of the SOA at this time. The SOA is Sergeant Reiss's union.

Gilleece had an experience similar to Reiss. In October 2006, the state's Department of Personnel produced a list of candidates eligible for promotion to sergeant based on examination results. The list had ten names and in January 2007, a four person (first round) interview committee, including Defendant Bradley, interviewed the top six candidates, including Plaintiff Gilleece. The interview committee recommended that the top three candidates, as measured by examination results, be promoted to sergeant. Gilleece who placed fourth was passed over. In June 2007, a second list of eligible candidates was certified. Gilleece now stood at the top of the list. In late July 2007, the top five candidates were interviewed by a three member (second round) interview committee, including Defendant Bradley. The interview committee now recommended for promotion two candidates, Kelly and Skiper, who placed immediately below Gilleece, as measured by examination results, but had better scores in connection with the interview process. Gilleece was the only candidate who had better test scores than the candidates who received the interview committee's recommendation. The Township Committee approved the interview committee's recommendation on or about September 7, 2007.

On July 12, 2005, Plaintiff Reiss and sixty other SOA and PBA members attended a Township Committee meeting to support efforts to keep the "jobs in blue" program. Bradley

left the meeting, but afterwards Reiss saw a man tell Acting Chief Gordiano that Bradley wanted to see him. On July 22, 2005 and on January 11, 2006, the PBA filed an unfair labor practice charge with the New Jersey Public Employment Relations Commission ("PERC") against the Township. The PERC Complaint alleged that the Township illegally discontinued the "jobs in blue" program without proper union negotiations. The PERC Complaint also alleged that internal affairs officers conducted unlawful surveillance of police union members under orders from Defendant Bradley. A hearing was held on September 25, 2006 on the PERC Complaint. Reiss testified as to what he saw at the Township Committee meeting. On June 29, 2007, the hearing officer decided the case, and in a written opinion, the hearing officer concluded that the PBA's conduct angered Bradley, Bradley told Gordiano that he would be held accountable for the officers' conduct, and that, although Bradley did not specifically order the surveillance, his admonishment to Gordiano set it in motion. Reiss's testimony may have been necessary to those findings, as Reiss testified that he saw a person at the meeting tell Gordiano that Bradley wanted to see Gordiano after Bradley had already left the meeting. As explained above, in late July 2007, each of the two Plaintiffs would be interviewed by the relevant (second round) interview committee and were passed over. In each case, Bradley was a member of the interview committee. And on or about September 7, 2007, the Township Committee approved the recommendation of the interview committees.

Subsequently, Plaintiffs filed this suit. Defendants brought a summary judgment motion, which the Court granted in part. The Court's opinion and order was filed on May 17, 2010; an amended order was entered on May 18, 2010. On June 1, 2010, fourteen days later, Defendants moved for reconsideration, seeking dismissal of the entire action.

## III.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly recognize "motions for "reconsideration." *See United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999). However, New Jersey Local Civil Rule 7.1(i) provides for such a motion. The movant must "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." N.J. L.R. 7.1(i). Local Rule 7.1 requires the motion to be filed within fourteen days after entry of the order or opinion for which reconsideration is sought.[1] "Reconsideration motions, however, may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised

---

[1] Originally, New Jersey Local Rule 7.1(i) provided that a party seeking reconsideration must file within ten business days after entry of the order or opinion from which reconsideration was sought. This is no longer the case: Local Rule 7.1 now provides for a fourteen day period in which to seek reconsideration. This motion was timely.

prior to the entry of judgment." *See P. Schoenfeld Asset. Mgmt., L.L.C. v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). To prevail on a motion for reconsideration, "[t]he movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

## IV.   ANALYSIS

The two interview committees which recommended not promoting the two Plaintiffs were both multi-member committees. Bradley was a member of both committees. The remaining members are not defendants in this action. Plaintiffs point to no specific evidence suggesting that the members of the committees, other than Bradley, were motivated by anti-union animus. Thus, the gravamen of Defendants' position is that a careful and full analysis of the committee decisions reveals that even in the absence of Defendant Bradley, the committees would have arrived at the same decision. Defendants present this argument in the form of two charts. Defendants characterize this argument as evidence that had been overlooked by the Court. Their characterization is inaccurate. This precise argument was not made by Defendants in their opening brief in their original summary judgment motion. Nothing remotely like the charts now presented appeared in their opening brief in the original motion. This is an entirely new argument based on an entirely new presentation of the evidence in the record – evidence that Defendants had an opportunity to present in prior proceedings. It is not that the Court overlooked this evidence; rather, Defendants failed to make this argument. It is Defendants job to cull the record, not the Court's. N.J. L.R. 7.1; *P. Schoenfeld Asset. Mgmt., L.L.C. v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J.2001). Moreover, it is not the purpose of a motion to reconsider to allow a wholly new bite at the apple. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Moreover, the Court believes that given the temporal proximity of the Township meeting relating to the "jobs in blue program," the PERC complaint and adjudication – all matters of public record which members of the interview committee (other than Bradley) may have had knowledge of, and the decision of the Township Committee not to promote Plaintiffs, a jury may reasonably conclude that Bradley's views in regard to Reiss were known to the two remaining members of the interview committee or that Bradley's views had affected the remaining members' decision-making at the interview stage. This would not be particularly surprising as one of the two remaining members of the interview committee was the chief of police, who presumably was responsible to or, at least, worked closely with the mayor, township board, and Bradley – the Township Business Administrator. The evidence here is circumstantial, but it is enough to go to the jury, particularly where as here there was a history of (arguably substantial) friction between Reiss and Bradley.

Gilleece presents a different constellation of facts. Defendants argue that the record is devoid of an evidentiary basis to support Plaintiff's claim other than union membership itself. Unhelpfully, Plaintiffs fail to point to specific facts in the record from which a jury might conclude that Bradley had knowledge of Gilleece's union activities. Unlike Reiss, Gilleece can point to no specific history of friction with Bradley. Likewise, Gilleece's union membership (*standing alone and without more*) as a basis for his claim is substantially undercut by the fact that other union members were, in fact, promoted. With Reiss, a jury has reason to conclude that Bradley had knowledge of his Reiss' union-related conduct and may also reason that Bradley's purported ill-will infected the interview committee's decision-making. More importantly, Bradley's purported ill-will against Reiss was connected not merely to union membership but to Reiss' personal participation in the township meeting that discussed the "jobs in blue" program and the PERC litigation which arose in connection with that meeting. With Gilleece, by contrast, Plaintiffs point to no specific history of ill-will or even any specific evidence that Bradley had knowledge of Gilleece's union activities. Likewise, here it is unclear what chain of inferences based on circumstantial evidence might link any specific union activities by Gilleece to Bradley and then to the interview committee as a whole. It appears that a jury could not reasonably conclude that the decision not to promote Gilleece was based on union activities or membership. Therefore, Gilleece's claim must be dismissed.

## V.   CONCLUSION

For the reasons elaborated above, the Court **GRANTS** the motion in part, and **DENIES** the motion in part. Plaintiff Gilleece's Section 1983 claim is dismissed; Gilleece is terminated from this action; and no other relief is granted.

|  |  |
|---|---|
| | s/ William J. Martini |
| **DATE: December 8, 2010** | **William J. Martini, U.S.D.J.** |